Case number 19-5005 et al. Cook Inlet Tribal Council, Inc v. Christopher Mandregan, Director, Alaska Area Office, U.S. Indian Health Service et al. Appellants. Mr. Capell for the appellants, Ms. Patterson for the appellate. May it please the court, I'm John Capell from the Justice Department representing the appellants, Indian Health Service in this case involving, this appeal involving the Indian Self-Determination and Education Assistance Act, known as ISTA. Under ISTA, the plaintiffs are tribal organizations who seek to operate programs that were previously operated by the government under are entitled to receive, to be treated on equal footing with the government. They are supposed to receive the government, the resources that the government would have used to implement the program. And the Congress has established this parity principle in 25 U.S.C. 5325A. And that section contains two funding categories. First is A-1, which is the basic program, substantive program costs known as the secretarial amount. And then the second category is contract support costs, which are found in subsections A-2 and A-3. And the contract support costs provide additional administrative funding, funding for additional administrative costs that are not covered by the secretarial amount. The district court and the plaintiffs, however, seek to blur the distinction between the secretarial amount and contract support costs, and to turn the contract support costs provision into an open-ended supplement to the secretarial amount. Congress wrote no such blank check, however, as is clear from the plain language of 25 U.S.C. 5325A, and from the structure, purpose, and history of the ISTA. Turning to the history of these provisions, Congress in 1975, when it enacted ISTA, it provided only for the secretarial amount. That is the core amount that provided funding, substantive funding, for these programs. However, it became apparent to Congress thereafter that that was not sufficient because tribes were having to expend additional administrative, additional resources for administrative costs, and therefore, were eating into the substantive program amount. So, therefore, in 1988, Congress enacted the first, the core contract support cost provision in 5325A-2. And that established that that tribes can get administrative costs for certain items, for things that are not normally carried out by the secretary through the secretarial amount, and also items where the funding is provided from resources other than the contract. Now, Congress further refined the statute in 1994 when it adopted a subordinate contract support cost provision in A-3. That simply refined and clarified the meaning of contract support costs, which is set forth broadly in A-2, and it provided for a certain, for direct and indirect contract support costs. However, again, this was done because Congress was concerned that tribes were being forced to use funds from the secretarial amount for administrative costs that the government would not have had to incur. So- Mr. Capil, may I ask you about how your agency reads 3A and what I call little- 3A, which provision, Your Honor? Judge Henderson, you may have cut out there after 3A. Additional administrative or other expense related to the overhead. Can you hear me now? Yes, I did. I just want to be clear, you're referring to A-2? No, to 3A, and then little-2. Little-2. Sorry, I misspoke. Yes, Your Honor. First of all, I would- Let me just ask, let me ask my question. Okay. Sure. That says any additional administrative or other expense related to the overhead. Now, do you read administrative to have to be related to overhead, or do you read administrative expense or other expense related to the overhead, and then what do you consider overhead? What does the agency consider overhead? Well, first, before I answer that question, Your Honor, I would like to stress that that provision, 3A, little-2, is not involved in this case. This case only concerns direct contract support costs under A, little-1. That has no- The reason it's interesting to me is why overhead, which I can't find to find anywhere, would not include rental costs, so forth, of this facility's overhead. Well, Your Honor, we don't read overhead that broadly. We believe that overhead is concerns items where the government is providing across-the-board funding. It's not separating out items that are- Can I find that anywhere where overhead is set out as what it includes? Well, Your Honor, I don't think that the statute or the Indian health manual really defines overhead, but when you look at the way the statutory provisions interact, it is clear that overhead is a more limited category. In section A-2A, that is the basic contract support costs provision, and that really does not- That provides for things like workman's compensation, premiums, and insurance costs that the government does not have to pay. And then A-2B applies to things like attorney's fees, which the government provides for from resources outside of the contract. So A-1, 3A-1 in the government's view, which is the direct provision, direct contract cost provision, deals with things like rents and facilities costs such as are involved here. That is not overhead within the meaning of 3A-2. How about utilities and phone and water? Again, those would be considered direct costs under 3A-1 rather than overhead under 3A-2. All right. All right. Thank you. Does it matter? I thought your main theory, I'm a little confused why you seem to want to frame the answer to Judge Henderson's question as one about 3A-1 versus 3A-2. I thought your primary theory, tell me if this is wrong, but your primary theory is it doesn't matter whether or not they satisfy three because they also have to satisfy two independently. That's correct, Your Honor. Two is basically, two is the gatekeeper. They have to be within two before they even get to three. Three really is a refinement and clarification of two. Can I ask you one question about two? Yes. Which is, to me, this case seems to come down to the question whether the kinds of costs that are at issue here, the rent and the salaries and the utilities, are items normally not carried on by the secretary in operation of the program if the federal government ran the program. That is the government's view, Your Honor. Yes. To make the intuitively appealing point that this seems pretty self-evident that if the government runs an alcohol treatment facility, they're going to have rent costs and salaries and they have to pay for telephones and such. How should we think of that question? Is it enough for you to win just by saying, give me a break, this is self-evident or is that something you somehow have to prove with record evidence or a Brandeis brief or I don't know what? How do we figure that out? Your Honor, in our view, it is clear on the face of the statute. This is the way the statute works and the way it makes sense. This is the way to harmonize the various provisions, the secretarial amount provision and the contract support cost provisions. It's consistent with the history of the ISTA and it's also basically, in our view, this is the clear meaning of the statute. Sorry, how does the activities the government would normally carry on if it were running this facility? Well, Your Honor, certainly things like rental costs, like salaries, these are things that obviously, that on their face, the government would normally be carrying on to operate its program. There's no question here. Here, there actually is record evidence that there was, from the original contract in 1992, FY 1992, that the facilities costs were included and the plaintiffs acknowledged that. The $11,838.50 figure. There certainly can't be any dispute in this case that this was part of the secretarial amount. Included in the secretarial amount? Yes, Your Honor. Which tends to support what the seemingly obvious, but maybe not proven proposition that those are costs that, of course, the government would incur if it were running the program. It is awfully dated, but I take your point. Yes, Your Honor. One final thought on that. The Indian Health Manual is also consistent with that because it says, with respect to things like rents, that it's only in extremely rare circumstances that rents could be treated as contract support costs. That is because they are generally within the purview of the secretarial amount. Thank you. I will now reserve. We'll give you a minute and reply. Ms. Patterson. May it please the court, this case centers on two statutory provisions, one general and the that the secretary must add contract support costs to the contract. The later enacted very specific one, section 853.25A3, defines with precision exactly what those added contract support costs are. Ms. Patterson, would you be able to pick up perhaps where Judge Katsas is a hospital? It almost always pays for facilities costs like rent. Right? No. Okay. Tell me why I'm wrong. The Indian Health Service, first of all, may incur some facilities costs, but not necessarily of the same kind and like that a tribe might incur. Rent is a good example. The government may rent a building. The government might just own it outright. Things like a mortgage, the government does not incur mortgage costs. The government either has funds to buy a building or it doesn't or funds to build a building or it doesn't. Property insurance, the government self-insures. They don't buy commercial property insurance out on the market. This was some of what the district court struggled with when he said there's no definition of what the secretary normally incurs. The other thing is that the statutory text in A2 directs you to look at the secretary and his direct operation of the program. Well, in most cases, as Mr. Capell pointed out, a tribe is taking over a program that the federal government is running and they know what the federal government incurs. There's an actual budget, the actual expenditures. This is a unique case because the government never ran this program and so the parties agreed to what a budget of what would incur. They agreed what cost the secretary normally would carry on. Here, it was a portion of rent and it was a portion of a facility's coordinator salary. Here, the government agreed that the council has over $302,000 of other reasonable allowable costs related to the subject of the IHS contract that have not been reimbursed in the secretarial amount. That's why we're here today. Let me ask a different hypothetical maybe. That answer was helpful. I appreciate it. Let's take a less general question. Imagine that IHS wants to open up a hospital in Anchorage on land that the government doesn't already own. That's somewhat analogous here because here, Cook Inlet presumably opened the rehab treatment on land that it did not already own. Am I right about that? They didn't already own this land when they opened the treatment center, right? Correct. Okay. The government, IHS, decides it wants to open a hospital in Anchorage on land that it doesn't already own and it's going to operate that hospital directly. It would have to either buy the land, which would be an expense, or it would either have to rent the land, which would be an expense. Is that correct? Correct. In that case, I don't understand how this wouldn't be almost a textbook example of a secretarial amount. This is a cost that IHS would almost always have to pay out of its pocket if it were going to operate directly the type of facility that Cook Inlet is operating. I'd like to make a few points in response. First, we agree that if facilities costs had been paid in the secretarial amount, the federal government would get an offset that for every facility's cost that they had and they transferred to Cook Inlet. The issue is here, the federal government was not operating that facility, right? All they provided was $12,000. It was $11,838, but we give them credit for every dollar that they've shown that were transferred. The whole contracts of per cost provisions were added, as Mr. Capel explained, because the agency was underfunding indirect costs. They were underfunding. Ms. Patterson, let me ask about that. Let's say I take as a given what you just said, that IHS is underfunding a program that they agreed to fund. It probably would not be the first time IHS underfunded a program that agreed to fund. I would think that your remedy in that situation is to say your secretarial amount is too small. Give us the extra $300,000 as an addition to our secretarial amount. Why didn't you ask for that? Why didn't you go to court and demand that? There's a few reasons, but the first is we're not talking about expanding the program. That's the government's argument. We're talking about the subject of the IHS contract and we're looking at the funds that are needed to run that IHS program under contract so the program that the council runs is on parity, like Mr. Capel said, with the same program. I get that. I may have misspoken, but that was supposed to be a given and assumption in my question. Let's say IHS authorizes this program as it currently exists, every bed, every square foot, everything. They've authorized that program and yet they've underfunded it by $300,000. That seems to me to suggest that what Cook Inlet needs to do is go to court and say our secretarial amount is $300,000 less than the statute requires IHS to pay. Maybe there is a strategic reason that Cook Inlet didn't do that or maybe you're going to tell me that I'm misreading the statute and secretarial amount means, but I am curious. Why wouldn't Cook Inlet have just done that? I mean, maybe that would have been an option, but you also have a statute that says these fees, overhead, administrative, support costs, the costs that are necessary to run the program are recoverable as contract support costs. If they're not normally paid by IHS or IHS to operate this program directly. But what does that mean? You have to look at the direct operation of the program and here the direct operation included $12,000. It included part of rent. And then when they added additional funds around 2004, there is no funding of facilities because you have these statutory provisions that allow a contractor if they have to not have to take from those program dollars, not have to take for the money that pays for those counselors and those treatment beds and the people with the white jackets, but there is a funding mechanism available for the necessary support costs to operate the program. And there's a whole manual and facility support costs are one of the main three categories of contract support costs that can be recovered. Suppose it were crystal clear that we were talking about a category of expense that the government would have to incur if it were to run the program, whether it's rent or salaries or whatever. Suppose that's clear. And the secretary, if he ran the program, let's say would spend a million dollars. And let's say that the contractor reasonably spends, I don't know, $1.2 million on that it's more than the secretary would have spent. Your theory is you get to recover that extra $200,000 because it's a reasonable expense, no matter how much it is the kind of thing that the secretary spends and he just wouldn't have spent as much. If it's a support cost, yes. And let me give you a real life example. I'm going to take a thought of facilities context for a second and talk about health insurance. The government provides health insurance for its employees. Everyone agrees they have to do that, but the government generally has the federal employees health benefits program. It's good insurance and it's pretty cheap. Tribes, when they provide health insurance for their employees, they have to go out on the and it's often at quite a bit higher expense. Direct contract support costs pay that difference between what the tribe pays on the commercial market and what the federal government pays for its health insurance. It's the same type of item that the government is providing, but the contract support costs are there so that that extra premium, if you want to call it, that the tribe has to pay does not have to come out of the program costs. And you actually see this in the IHS manual and exhibit 6-3-G. They actually have a chart with theoretical health insurance amounts, right? The government pays $200 and it costs the tribe $300 and that $100 come out. And it explains after determining the total cost of the activities to be supported with CSC, IHS will deduct any funds that may have been provided to the awardee in the secretarial amount for this activity to avoid duplication of costs. So that's what we're talking about here. Okay. All right. If there are no more questions, Mr. Capell, why don't you take a minute if there are any questions for you? Oh, gosh. Okay. Thank you. Thank you, Your Honor. I would respectfully disagree with the last thing that council said, because we're not talking about insurance costs here. We're talking about costs that are within the secretarial amount, and they are not part of 2A. What's your answer to the conceptual point that sometimes it's the same category of cost, but it's just, it's obvious, it's much cheaper to the government than to any other provider? Your Honor, if it's the same category of cost and it's within the secretarial amount, unfortunately, they are not able to get additional contract support costs for that. That's not the purpose of contract support costs. It is a categorical non-duplication principle. So for workers' comp, federal government just, they self-insure, and so that's a different That's right, Your Honor. But for health insurance, the providers, they sort of buy it, but sort of not. I mean, FEBA is, Ms. Patterson is right, it's freakishly cheap and good to those of us who are lucky enough to have it, but because that is hugely subsidized, but costs IHS a little bit, then the provider who has to pay three times as much on the open market to get that insurance is just out of luck. Well, to the extent that insurance, that any costs are within the secretarial amount, that is true. They can't just get the difference through contract support costs. Mr. Koppel, why not just say, if it's correct, that the example Ms. Patterson was giving is textbook contract support costs, that secretarial amount covers what the secretary would have paid, but there are other necessary expenses that the secretary wouldn't incur, and that's where contract support costs kick in. But with rent, we're talking about bread and butter secretarial amount, because assuming the government doesn't own the land already, just as Cook Inlet doesn't own this land already, the government wants to rent 1,000 square foot, it's got to pay the market price for 1,000 square foot. And if Cook Inlet wants to rent 1,000 square foot, they should get that amount, whatever the amount is for that rent, from IHS. If they're getting that much, then they should go to court and they should demand the difference as part of the secretarial amount. Now, if Cook Inlet decides, well, it's reasonable to rent 1,020 square feet, and so there's going to be an extra cost there that the government wouldn't incur because the government would only pay, were it running the program, 1,000 square foot facility, then that is extra money that's going to have to come out of Cook Inlet's treasury, and it's not going to be reimbursed, right? Your Honor, that's exactly right. That is precisely the government's position here. And just to close very quickly, I would point out that there was a lump sum increase. The total in 1992, when they were only getting the 11,838 for rental and salaries, Congress added $1.5 million to the secretarial amount for Cook Inlet in 2003, and so it's now approximately $2 million, and this is lump sums. So even though there's no reason to think that they're limited to the 11,838 that they originally got for rent and salaries, the tribe gets to, it allots the lump sum as it sees fit, but it is obviously limited by the parameters of the secretarial amount. So if there are no further questions, I would urge the Court to adjourn. All right. Thank you, and Madam Clerk, if you'd give us an adjournment.
judges: Henderson, Katsas, Walker